Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you and welcome to all of the lawyers and you can see us. Two of you were on this same thing a year ago and one more has come in place of the other. I think you all are aware to please keep your audio off until it's time for you to talk and then of course you turn it on. If you have any other questions about doing the online OA let me know. Otherwise we'll go ahead and get started and so I think we all know what this case is. It's Arneson v. Lutnick et al and we will begin with John Gore for Arneson. Good morning your honors and may it please the court. John Gore for the Arneson appellants. The district court correctly concluded that then assistant administrator Coit's approval of amendment 54 did not validly ratify the council's it also correctly concluded that it has jurisdiction over the Arneson appellant's alternative claims against the council. Court therefore should proceed to the merits reverse the judgment below and grant Baker during the final rule an injunctive and declaratory relief. First Coit's approval of amendment 54 did not constitute a valid ratification. There was no principal agent relationship between the council and the secretary or court. Mr. just because your time's limited because of our remand we're now in the queue between the third circuit and the first circuit so could you you know as succinctly as possible tell me why judge Bevis's conclusion that we can avoid the cause any constitutional infirmity through severance is wrong. For two main reasons your honor. First the inquiry into officer status is categorical it's not power specific that's clear from FriTag. But has any circuit yet applied FriTag in a rule making context? I don't not aware that any circuit has but I think that flows from from FriTag and Braidwood and other cases from the United States Supreme Court that the uh inquiry is categorical and not power specific. Also look at free enterprise fund. Free enterprise fund says that congress not the federal courts have the authority to blue pencil an official's authority. But I guess I'm still if FriTag's a standing decision I'm not sure why it would speak to severability at all. You know what I really am wondering is why doesn't Arthrex map right onto this where you've got a you know 7-2 healthy dialogue with justice Gorsuch where the court's saying do not use the appointments clause as a wrecking ball. Avoid constitutional infirmity and it seems to me you sever any conceivable binding action by this counsel and and Judge Bevis is correct. I'll turn that into a question. Do we have to split with the third circuit? Do we have to say he's wrong? I think we probably do. Yes I believe you do and I think Arthrex proves our point because Arthrex makes clear that the severance there that happened was from a review provision. It was a provision that insulated certain decisions from review by the principal officer. The court made clear that if instead it was a power that that was at issue not a review provision but a power wielded by the inferior officer that severance would not have been an appropriate remedy. We've explained all that in our brief and so we do believe that Judge Bevis was wrong and the third circuit didn't even address any of these issues. It didn't address free enterprise fund. It didn't address FriTag and it didn't address Arthrex in those cases. Lofsted from the third circuit would it be any different in this court? I mean in the outcome for you would that be different in any way from the outcome for the people in the third circuit? If the court in fact followed the third circuit is that your question your honor? And that's a hypothetical. I'm not saying we will or we won't. I'm just saying if we did follow it would anything come out differently here than it came out there? No I don't believe that it would. That's why the third circuit did what it did to reach that particular result but for the reasons I've explained that's not the right analysis and the third circuit simply got it wrong. Part of my difficulty is is I do tend to think these fishery councils are continuing but they seem to have a spectrum authority and when I look at a catch limit that really looks like a bottom up data recommendation that sounds very advisory and non-binding hence you get notice and comment and you get the final rule. If we're just focused on the catch limit and I know you say FriTag says the tail wags the dog we got to look at veto powers etc. But if instead we look at just the catch limit data recommendations isn't that more a lesser functionary and employee type? And if we were to say no it's not wouldn't that knock out a lot of advisory bodies advising say the FDA in all sorts of contexts? It's a double question. Sure so let me address the first part first. That authority to the predicate power to develop the amendments and proposed regulations is itself a significant authority for reasons that we've explained. It's similar to the authority that's wielded by ALJs and the CHIA or by the officials in Braidwood who the U.S. Supreme Court recently confirmed are inferior officers. It involves collection of evidence. It involves. I'm just going to stop you there but in the in in the statement of the case in Braidwood the court did say until they got binding powers they weren't even officers of any sort. You remember that language at the outset of the opinion in Braidwood? I do and we I think there's no dispute that the council does have some binding powers. The government has said it's not going to defend those particular powers that it agrees are fine. But even the predicate power to develop these and propose these implementing regulations is itself significant. You cited a brief that the secretary filed in the central district of California where the secretary said that he has no control over the council's exercise of that power. The decision of when and how to exercise that power resides in the council alone and the council's doing things that are similar to other federal officials that the government or that the Supreme Court has held are inferior officers for purposes of the appointments clause. That was my point about the ALJs. That was my point even about the officials in Braidwood. They were making recommendations perhaps and their work was subject to supervision and approval by a principal officer but that simply underscores that they're inferior officers not principal officers. It doesn't transform them into employees. They're officers because they wield that authority. You're probably familiar and I'll ask your companion attorney because he is more familiar but with the wild case in front of the fourth circuit, the spinning dolphin case. Okay, I'll ask him. I guess the question to you is with just a few seconds left, what about the DC circuit's moose juice case which is more in the realm of ratification? And that was an actual ratification of a principal agent relationship. What's different here is that the council's exercising authority granted by congress. It's not authority that's been delegated to it by the secretary or by court. That's why it's not a principal agent relationship so there could not have been any ratification even under this court's opinion in Braidwood. Okay, you've saved time for rebuttal. You can now turn off your audio and we will turn to Michael Poon who's back from last year to talk about bail it out. Thank you, your honor. It may please the court. I want to address some of the points that have already come up. On Friatag, you would have to split from the third circuit in order not to apply Friatag the way we've seen it because Lofstad did apply Friatag in considering all of the powers of the councils. On severance, I want to make a slightly different point than my co-counsel for the arson plaintiffs, which is that if you're going to sever, so you shouldn't sever, but if you're going to sever, you should sever the appointment provisions because congress's intent in creating the councils was to have regional multi-member expert bodies control the policy instead of having a single person control all the fisheries across all the waters of the federal fisheries. And you can retain that local characteristic by severing the appointment provisions because there are these qualifications in section 1852 that say at least... I don't remember this alternative developed in the brief. Maybe it's there, but let me ask this from my most important question to you because I did read the oral argument I think you had in front of the fourth circuit in the Dolphin case. And you were asked, is there any negative authority to Moose Jews, to Kazmowitz, and what the district court there said was a consensus of all five circuits that ratification works. You told the judge, if I remember and you would remember better, you don't know of any negative circuit authority as to ratification in the appointments clause context. Do you have any negative authority now? No, your honor. And as I relayed to the court there, there hasn't been... Ratification as an agency action is fairly new and there hasn't been an examination of these sorts of questions that will... or these sorts of problems with ratification that we've raised in our briefing now. Do you agree with the district court there though that five circuits have applied ratification to quote cure alleged appointment clause infirmities? Five circuits? I'm not remembering five circuits right now. I think there's a ninth, there's the third, there's the DC, and I don't remember other circuits. Okay. That's a formidable body of law that's emerging. Admittedly, and this is a question for the government, it would seem to sort of whitewash underlying appointments clause violations, but it is a very substantial body of circuit law that doesn't have any exception to it yet. That, well, yes, at the circuit level, but that's only relevant here if the court's action is a ratification and it's not. I mean, the government even says this isn't a formal ratification. None of the ratifications requirements apply here. There are three requirements that the government admits applies in ratification cases in other situations. They have to make an independent decision on the merits and so on, and I don't think they even apply those here. Well, why if they send it out for notice and comment and even some of the plaintiffs were able to give a comment, how isn't that an independent assessment that the secretary did before issuing the final rule? It's an independent assessment, but it's not an independent assessment that should be adopted as a policy matter, which we know from the record. We know we have her words. Her words are Amendment 54 is consistent with all applicable law. That's all she determined. She didn't determine that. But what about all the commentators that make policy arguments? You think that the secretary is just reading them and ignoring them because the statute says only lawful? I think that the policy and the legal issue is it's interconnected, right? But the law creates a zone of acceptable policy. If you step outside of that, then it's inconsistent with law, right? I think consumers research recognizes as well, right? It says the SEC has six principles it has to follow, but within it can strike a balance amongst those six principles and still be acting. That's the same thing here. The council has a zone of discretion within which it is acting lawfully. If the secretary were doing this straight up unilaterally, no council, right, acting using her unilateral powers, no court would say the secretary only has one lawful choice. We would all understand the secretary has multiple lawful policy options. And that is the same analysis that the assistant administrator conducted here. She said Amendment 54 is consistent with all applicable law. When Judge Bibas went through the statutory provisions, did he make any mistakes in terms of how he assessed binding powers that councils have over the secretary? Yes, your honor. So on 1854, he made the mistake to say that the secretary's review is plenary. That can't be squared with the statutory language. The statutory language says he reviews for consistency with law. And that has to be the case because if he rejects an FMP or FMP amendment, he has to say what inconsistency there was. That's 1854A. Even if the power of review was plenary, at worst that would make the council and the secretary equals, they would have to agree in order for a policy to be issued. This is like if Congress passed a bill by a bare majority and the president signs it into law. That's not a ratification. That doesn't reduce Congress's role to insignificance. Congress still has to be the one to pass the bill in order for the president to have a bill to sign into law. So even if the review were plenary, which obviously the president's veto is, that it wouldn't transform the council's insignificance. Just before your time's up, can you specify any other misinterpretation of the statute that he gave in the third circuit decision other than the one you just described? Or does none come to mind? Yes, so Judge Bebas didn't consider FMPs taking effect by default, which has significant downstream effects. It binds future regulations. And as we noted in our opening brief, or I think maybe the reply brief as well, it having an FMP means that that binds state regulations under 1856. Let's see. That's fine. Thank you. Okay. All right. Thank you. Okay. You've saved some time for rebuttal. So unless you have something in 10 seconds, I'll let you go ahead and turn off your audio. And we will turn to the appellee, John Baez, representing Lutnick et al. May it please the court. John Beas on behalf of the federal defendants. I wanted to start by touching on a couple of developments since our last argument that I think bears on what I think are the two buckets of issues the court needs to grapple with in this The first bucket, to my mind, is whether the regional council members exercise significant authority in what I think of as kind of the core structure and recommendation process the Magnuson-Stevens Act sets up. Two courts, the Third Circuit and the District Court in Maine, have now both considered that exact question and included that process as advisory, or at least in the statute can reasonably read to be advisory. And the Supreme Court made clear in Brigwood, as Your Honor mentioned, that advisory functions are not significant authority. And the problem with plaintiffs' response on that is they essentially say, well, we infer these limits on what the secretary can do in that review. But there's no express statutory language. Counsel, I will have a couple questions on whether that position, Third Circuit, can reconcile with FriTag. But what would really help me from the government, because I have tried to read ENRD's positions taken all over the country on this, is what is exact position? What is the exact way you would say we should write this? In other words, first, I'll give at least three that I see. Do you support the district court's ruling here that there's no standing because proximate causation wasn't found? Or, so in other words, we wouldn't reach the constitutional question. Second, do we reach it and we affirm because the fishery councils are okay under the Appointments Clause? And third, let's say we reach it and there is some as the Third Circuit said, how do we cure it? Severance or ratification. So those are three different ways to approach this. I want to know exactly the government's recommended first best solution. So I think given kind of the importance of this structured advisory process to the way fishery management works and the way it ensures that state and local voices are heard and really serves Congress's purpose is ensuring those voices play some role in how the secretary thinks about fishery management. We think finding that the councils play an advisory role and therefore don't raise a constitutional problem would be kind of our first preference. But, you know, I also think the court's proximate cause reasoning, I think, reaches an intuition that also undergirds how we talked about kind of functional ratification that what in an Appointments Clause context, Appointments Clause question and rulemaking context, what plaintiffs are really entitled to is an independent review and an independent decision by a politically accounted, accountable, duly appointed officer. And this is an administrative review here as the district court in this case found was an independent review and independent decision to adopt the catch limits. So in effect, they've already gotten on the merits what they're entitled to. So I think what is that mootness? Is it ratification? And specifically, are you relying and embracing the Moose Juice decision that seemed to start a lot of the ratification line of authority? Yeah, I think we think, you know, Moose Juice is right that that it's that kind of same intuition that what you're entitled to is an independent, unconstrained review by a politically accountable, duly appointed officer. That's what the person in Moose Juice got. That's what the assistant administrator here did. From our perspective, though, that way, I guess that would be saying we're going to either assume a constitutional violation or say there's one, but it was cured. And your first recommendation is no constitutional violation. You suggest that's what the Third Circuit said, but it isn't because they said, yes, there would be one if we look if we apply FriTag, the tail wags the dog. And lo and behold, the statute gives them veto power. So are you defending the Third Circuit law stat decision on the merits, suggesting we should bring to bear Arthrex and sever? Or are you saying that Judge Bibas was wrong and we can break up the powers? We I think in our view, the plans really don't have standing to challenge provisions that played no role here. But if you reach those provisions, we think Judge Bibas is right that severance is the appropriate role there because those are two rarely invoked ancillary provisions that aren't central to the core operation of the act. Just to put a point on that, agency counsel can't remember a time in the 50 years of experience on the act when any secretarial action was blocked under any of those provisions. OK, but that does that means you have to give me an answer to the FriTag friction problem that the tail wags the dog. When courts are going to classify Article two entities and people, we look at all powers and any single power will fix what they are classified as. So I think if you look at the FriTag discussion on 501 U.S. 881 to 82, where it talks about why the special tax judges there have significant authority, it really focuses on the role those judges play in the trial process, admitting evidence, enforcing discovery orders, the possibility of contempt. So you want us to be the first circuit that says FriTag is completely inapplicable to rulemaking. Is that what you're suggesting? It's not so much that it's inapplicable to rulemaking. We're saying there, those plaintiffs in FriTag were injured by the exercise of significant authority because. Oh, OK, so this is backing into injury and standing don't even address the merits question because these individuals can't complain as to veto power. But the provisions that weren't didn't play any role. And that's not what judge that's not what the Third Circuit said. That's true. That's not. So are you defending the Third Circuit decision on the merits as the best solution or not? So if you reach that, if you if you if you think not an F, not an F, I'm not meaning obnoxious, not an F. What is the you are centralized? You're representing the NRD in the first circuit. You know this issue inside now, not if what we do. What do you think is the best legal resolution? I think we think the best legal resolution is saying the core functions are advisory. The plaintiffs don't have standing to reach the kind of ancillary provisions that didn't affect them. We think if you do reach those, then the right answer is severance because they're not central to this here. And I think if you look, my colleague on the other side, cites free enterprise and says it puts a bar on this kind of decision making. But I think if you read through the decision making there at 561 US 508 to 510, you'll see that what the court is really saying is the PCLO, the PCAOB, this board has this wide ranging, significant authority for enforcement and rulemaking. And if we cut all of that out, we're really reworking the statute. And what the severance power is, is a negative power to disregard unconstitutional enactments. But the negative power to disregard unconstitutional enactments works fine, where what you have are kind of two ancillary provisions that kind of jut out and might cause a problem. They're not central to the act. So you're not reworking the act the way that doing it in the PCAOB context. Are you familiar with the spinning dolphin case? A little bit. Yes. Okay. You filed a 28-J after Braidwood came down, and I think you told that court ratification is the way to go. Right. In that court, in that case, there's a different issue. The ratification issue is the only issue presented, because there's a factual question about the system administrator's approval. So instead of going forward on that, the NOAA administrator ratified the decision, and the question there is whether that ratification is valid. And we think that ratification is for the same reasons as here. He was a duly appointed politically accountable officer, and he made an independent review of the record and reached an independent decision. So we think that's just a straightforward ratification case. And we think Braidwood, it doesn't directly address ratification on our rulemaking. It addresses ratification, in the Supreme Court opinion, addresses ratification on the appointments there. It doesn't address the fact that the HHS secretary there also ratified the prior recommendations of the U.S. Preventive Task Force. And so I don't think it's fair to read that to call into question whether ratification can happen in that context. You mentioned Braidwood. Why should we distinguish this case from Braidwood to find that council members are not inferior officers but employees? So I think if you look at the Braidwood decision, I'm sorry, in the Westlaw version at page star 19, there's a discussion of kind of the history of the U.S. Preventative Task Force. And it started out as a periodic advisory body established by HHS. And then in 1999, Congress made it statutorily a continuing body that would make recommendations to the agency on preventative health care services. But from 1999 to 2010, the Supreme Court explains they were clearly employees and not officers during that timeframe when they were making recommendations. And what changed in 2010 is that their recommendations had the force of law. When they made a recommendation under the Affordable Care Act, they made a recommendation that preventative service was an A or B category service, then health insurers by law had to cover those services at no cost. And so that fact that their decisions were legally binding is what changed them from employees to officers. And while the Secretary, the Supreme Court said, had authority to block those from taking effect, they took effect unless the Secretary did that and were legally binding. That's not true for regional council members. Their recommendations do not take legal effect. They don't bind fishery participants unless the Secretary takes a separate action promulgating. How do you distinguish then the 1854C1, the Secretary may prepare a fishery management plan if, and then there's this list of if, how do you swirl that with what you're saying? Sure. So I think this goes to why I think my colleague was wrong when he said the step back and look at the broader context of how the Congress intended fishery management to work. Fishery management is kind of a long-term thing. It requires scientific study and evolving practices over time. And Congress wanted the Secretary to be informed by state and local input when he's making decisions about management and conservation. And so in the ordinary course, Congress wanted him to take the time to go through this council process to get recommendations and to think about those recommendations before acting. But under 1854C1, Congress made clear that if there was something that the Secretary believed was required for conservation and management of the fishery and the council wasn't acting in a reasonable timeframe to address it, the Secretary was free to act. It essentially gave him plenary power to act. And if it was a real emergency, it also gave him authority under 1855C to implement emergency measures in the interim while he's doing notice and comment on his own secretarial plans. So the context is the Secretary always has authority to act. Congress, when possible, wants it to go through the ordinary course with the council recommendation process. But if that is not working, the Secretary can still act to conserve fishery management. I think one of my co-counsel in their briefing talked about it being a process, being a lock with two keys, and the council had a key and the Secretary had a key. But I think 1855C1A essentially gives the Secretary a master key to open that lock whenever he thinks it's necessary for the management of the fishery. So the backdrop is the Secretary can act, but ideally he does it in a way that takes time to consider the state and local input before acting if it's not necessary or if there's reasonable time to do that. It's not essential to maintaining the fishery to act faster, but he has full power to act if he needs to. I've got two sort of what I think of as limiting principle problems, one that may be a softball and one that I think is a hardball. To the extent that we would go with Braidwood ratification, what's the limiting principle or is that going to just perpetually insulate appointments clause violations? So I think if the Assistant Administrator, for instance, was not duly appointed, if they were acting and not appointed by the Secretary and they did something, there would still be an appointments clause problem with that unless someone else ratified it. All ratification does is essentially, as the D.C. Circuit and 4th Circuit both say expressly, it is not making it move. It is curing a problem on the merits because it is giving the plaintiffs a decision by an independent decision by a duly appointed politically accountable officer, which is what the appointments clause is intended to ensure. So they're getting the result that they're entitled to. It's not insulating it, it's providing them the relief they're asking for. But it allows, arguably, officers to remain in their position and remain doing their job, even if on analysis we'd say they're constitutionally infirm and the President has lost his sort of unitary executive authority over them. So I think that's the case for any ratification. The question of whether the agent is infirm or not is kind of, you know, is if we were to rule against you, I didn't see in your brief you listing all sorts of advisory expert bodies that suddenly their recommendations would be voided ab initio. Is there a parade of horribles or is the Magnuson Act so unique and it was passed at a time where it was designed to be delegate to states? And it's just, even if it's been successful, it doesn't work in the new formalist world we're in for appointments clause. So I guess there aren't things that are exactly the same as the structure here, but there are a lot of places where Congress procedurally requires the government to take advice from experts before acting. That includes things like FDA advisory panels. It includes even federal advisory committees under the Federal Advisory Committee Act. It includes even, to some extent, people who participate in the notice and comment process because they're able, you know, Congress, the agency is required to consider those comments before making a final decision. So there's a lot of places where Congress puts these kinds of procedural steps for agencies. We don't think that kind of procedural step is necessarily a problem if the agency retains substantive authority to do, at the end of the day, what they conclude is right after considering those recommendations. But we think, depending on how the reasoning went, if there was a reversal here that said kind of a purely advisory role from the council is a problem, I think it would raise very significant questions about a lot of the operation of a lot of different laws where agencies do have to take into, have to, you know, are asked to take that procedural step of taking into account input from outside. When you say the agency is required to take into account comments, I noticed the Arneson plaintiffs did file a comment saying this is a constitutionally infirm originating council. Did the secretary dignify that at all or no? It's been a while since I looked at the final rule but I believe there was a response on that. It explained essentially our position here that the advisory, the council's process and the catch limits was advisory and so therefore it wasn't a problem under the appointments clause. I believe there was a response on that comment. Would you agree that these fishery councils have pretty continuing permanent, you wouldn't dispute that aspect of them or would you say that's still in play? I think we touched on this last time. I think the government's position is they're really temporary and episodic because they only meet a few days every year but I think we recognize that the case law on that is pretty daunting, pretty challenging to overcome on that issue and I said so we're not really pressing that argument here. One last, try it Jack. What case best supports your contention that proximate causation precludes relief? So I believe in the, you're talking about the district court's reasoning here on proximate cause and not the standing question on cause. So I think really that there's not a case that directly uses that proximate cause analysis but in our view it's really getting to the same intuition that some of the ratification cases address where what are you entitled to under the appointments clause to make sure that there's a politically accountable duly appointed officer making a decision. So in our view that kind of reasoning, although it's a slightly different framework for it, underlies a lot of the ratification decisions on rulemaking which I want to, I think is very different than the adjudication context because in adjudication context the hearing officer as anyone who's handled a trial knows there's a lot of decisions in the course of a hearing about you know what evidence comes in, what questions does someone have to answer or not answer, what discovery is forced or not forced that really shape how a proceeding goes and that that's why I think if you read those pages and Freitag or Lucia the court said look these interstitial decisions during a hearing that these ALJs or special tax judges are making really are exercises of significant authority and they can shape an outcome here. So for ratification purposes if you have a hearing before an officer who's not duly appointed you can't cure that by someone else saying we think he reached the right decision. You have to have a new hearing to make all those kind of interstitial decisions separately. That reasoning doesn't really translate to the rulemaking context because under rulemaking whatever advice comes in to the decision maker, the decision maker can consider anything. If NIMPS had additional things beyond what the council said that they thought it was important to be taken into account in a catch limit decision, if there were comments from commenters and the notice of comment process that raised important issues, all of those things are fairly before the secretary in a rulemaking context before the assistant administrator rulemaking context. So it's not the same ratification question as an adjudication. It's a rulemaking decision where what you want is a independent decision by someone knowledgeable about the full catch limits or the right catch limits which I think the plaintiffs have already gotten. If we don't stop at a threshold standing causation and we don't assume the constitutional infirmity and deal with it with severance or ratification, so we're back on just the merits question, can you point just in a minute you have left what's the best circuit decision that explains the test court supply when they're looking at article two people and they try to distinguish between agents and contractors and employees and officers? Is there one case you would recommend so we know how article three is supposed to classify article two persons? So I think unfortunately in Lucia, the court kind of expressly didn't take up the government's invitation to provide flesh out really what that test means. So it is still kind of at a high level are they exercising significant discretion over important government function. And I think if you look at the Bradbury OLC opinion that I think we cited in our briefs. Stephen Bradbury OLC opinion on who are officers of the United States. He really explicates historically what this significant authority talks about and that's really you know sovereign authority to execute or administer the law or legislator judicial if you're talking about other officers but for the executive branch sovereign authority to execute or administer the law. And I think if you look at the reasoning in Braidwood where they talk about why the task force members kind of converted from employees to officers in 2010 it really highlights that it was this ability to make legally binding decisions that took effect and bound private parties like the health insurers that transformed them from an advisory role to an officer role and there's nothing like that in our view in this case. I know your time is up but if you were in charge of us would you just have us do a short paragraph that just affirms the district court or what is the exact thing you what is like the main sentence you really want us to say? So I think as soon as confirming that this kind of core explanation kind of confirming that this core structured recommendation process where the councils give advice and then the secretary evaluates that and makes a decision is the way to go and I think you know even if you think I think that's the best way to read the statute and I think at a minimum it's a reasonable construction of the statute and then if you think it raises a problem not to read it that way avoidance kind of requires that reading anyways and I think my colleagues haven't really addressed why avoidance doesn't you know fill that void if there is one and instead they're relying on kind of inference instead of express statutory language they don't point to any express language that really constricts the secretary's decision making they just say we infer it from these other provisions of reporting provision or other things but they don't ever say there's express statutory text that we think is a problem and so I think in that context we think it's the best reading for a lot of reasons about the structure of the statute we talk about in our briefs but even if you don't think it's the best reading we think avoidance still gets you to the same place that that kind of advisory okay thank you your time is up unless my colleagues have any more questions we'll move back to the other two so thank you we'll go back to gore thank you your honor i'd like to address five points briefly on rebuttal if i might first there was a quest there was a suggestion that fry tag itself was a standing decision it was not a standing decision it was a decision on the merits i'll cite the court to the dc circuit's opinion and landry at 204 f third 1131 to 32 where the dc circuit points out that fry tag requires this holistic analysis of officer status it expressly says if the dc circuit that the fry tag court made plain that it was ready to throw out the tax court's decision simply on the ground that special trial judges held what it that's clearly officer level authority to make final decisions even though the judge in that case had not exercised any power to make final decisions with respect to fry tag that underscores that the analysis is holistic not power specific second the test is not whether the inferior officer or the official wields binding authority that's not what's required what lucia requires is significant authority all inferior officers work is subject to supervision direction review and approval by a principal officer the government were correct that an official can only be an inferior officer if they have binding authority and there'd be no appointments clause challenges i want to hear all five but you're going to have to speed up because i have a question or two sure uh in any event the authority here as we've discussed already is significant because it the secretary's action and the secretary's review is deferential and is only triggered when the council acts third the government has suggested that review by a properly appointed officer would cure an appointments clause violation that's not true in lucia that happened the plaintiff's case was reviewed by the sec and the supreme court still vacated because the inferior officers appointment violated the appointments clause fourth there's no nothing to this distinction between adjudication and rulemaking the appointments clause applies to all federal officials not just adjudicators and of course it should apply even more strongly to rulemaking where the inferior officer is setting policy nationwide uh here here in this case subject to the only deferential review by the secretary whereas an adjudication involves only one party and in order constraining only one party and finally ratification requires that a principal agent relationship and that the purported ratifier had authority to take the action at the time the inferior officer okay i'm just going to interrupt you didn't have that um that but still we do have to split with the third circuit on severance correct and we have to either disagree or distinguish the dc circuit in moose juice for you to win both those things would have to happen yes or no uh yes and i think the moose juice one's easy for the reason we already discussed there was an actual principal agent delegation of authority not an inferior officers uh exercise of congressionally granted authority to that inferior officer thank you okay uh and we'll now hear the final rebuttal from poon thank you your honor i had several points but i want to focus on one main point braidwood wins the case for us the situation that uh opposing council thinks we're in is what braidwood said the hhs secretary could do in rate in braidwood it says the secretary can issue a regulation providing that no task force recommendation shall be deemed in effect until he or his designee has affirmatively reviewed and approved it that's the situation opposing council things were in here that reduce task force members to inferior officers not employees now this is distinguished from advisory boards and advisory councils because of what lucia said about independent authority or independent effect it said in the court said in lucia that alj decisions if the sec declines review become final they are the they are the they what as written by the alj that's the agency's decision here that's true as well if uh and that's true for the task force recommendations as well if the recommendation from the task force for the council's measure isn't blocked by the relevant secretary it's the thing that becomes law it's become this the thing that becomes the regulation that it has an independent effect that distinguishes this case and the task force from advisory councils uh so that should win the case for us that's exactly what the government says we have here on the uh on the on the idea that the veto provisions are rarely invoked that doesn't mean very much it doesn't mean that they're not central to the this this the statute sorry the that's right the statute uh you might think like uh let's see in federalist number 73 i think hamilton said hey the veto power of the president might not be used very much but it's going to discipline congress in in making uh in making bills that are going to pass muster with the president and that's the same thing here the veto powers may never have been used because the secretary knows that they uh that there is this veto hanging around and that the secretary's actions have to uh get council approval and if they are stricken you're going to upset the balance which ensures that the secretary is not unilaterally maybe i guess quickly in the last second so why is the district court wrong though why wouldn't we wait for the day when we see a veto power actually injure a plaintiff like yours but in your specific situation there's no injury there's nothing to be traced back to the fishery um or even really redress ability because we have to jump over the notice and comment final rule that you have statutory review to pursue well that's just right tag your honor the we only need in uh standing to challenge the rule at hand it's invalid because the council is is improperly structured it's probably structured because it's not properly appointed because it has all these powers and it's not senate confirmed okay any more questions from my colleagues okay thank you very much we very much appreciate all three of you doing this um hearing of this uh oral argument and uh we thank you for doing it the case is now under consideration by us and we will let you go thank you your honors you